UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**INTERNATIONAL CREATIVE TALENT AGENCY, LLC**
1741 S. Cleveland Avenue
Suite 301
Sioux Falls, SD 57103

**Plaintiff,**

v.

**NET HOLDINGS, A.S.**
Bade Sok No. 9
Etiler 34337
Istanbul
TURKEY

**VOYAGER KIBRIS, LTD dba MERIT CRYSTAL HOTEL & CASINO dba**
Kyrenia
Republic of Cyprus; and

**ONUR UNAL**
Acibaden Karsisi Aksel Sitesi B/Blok No. 10 D:5
Nilufer/Bursa
TURKEY

**Defendants.**

Case No.:

## VERIFIED COMPLAINT

COMES NOW the Plaintiff, **INTERNATIONAL CREATIVE TALENT AGENCY, LLC**, by and through its counsel, Athan T. Tsimpedes and the Tsimpedes Law Firm, and complains of Defendants**, NET HOLDINGS A.S. ("NET HOLDINGS"), VOYAGER KIBRIS LTD dba MERIT CRYSTAL HOTEL & CASINO ("VOYAGER"),** and **ONUR UNAL** states as follows**:**

### NATURE OF THE CASE

**COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF**

1

This is a complaint seeking to declare a contract obtain by NET and VOYAGER through false and/or concealed material information and terms, illegal and/or void. The Defendants **NET HOLDINGS and VOYAGER,** have colluded to wrongfully procure by deception the services of the International artist, Julio Iglesias, to performance in an area in which it is illegal to do so under United States and international law. In complete disregard for the laws of the REPUBLIC OF CYPRUS ("ROC") and the lawful property owner upon whose property the concert was to be performed under the falsified name "**MERIT CRYSTAL HOTEL & CASINO,**" the Defendants, including **UNAL** colluded and conspired to conceal the illegality of their conduct and identity of the true owner to obtain the Contract for the performance of Julio Iglesias and then to threaten, harass and intimidate ICTA based on false and deceptive representations.

## JURISDICTION AND VENUE

1. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332 with the amount of controversy exceeding $75,000.00. Plaintiff also invokes the supplemental jurisdiction of this Court with respect to claims based upon the laws of the District of Columbia, pursuant to 28 U.S.C. § 1367.

2. This court has Personal Jurisdiction over Defendants conducts business in the United States and in the District of Columbia pursuant to FRCP 4k.

3. Venue is appropriate in the District of Columbia pursuant to 28 USC §1391 consistent with FRCP 4k.

## THE PARTIES

4.      **INTERNATIONAL CREATIVE TALENT AGENCY, LLC (**hereinafter **"ICTA"**), is a limited liability company registered in South Dakota, with its headquarters located at 1741 S. Cleveland Avenue, Suite 301, Sioux Falls SD 57503. ICTA is a talent agency representing many

1   international and domestic entertainers throughout the world.

2   5.      Defendant **VOYAGER KIBRIS LTD.,** dba **MERIT**[1] **(**hereinafter referred to as **"VOYAGER")** is a purported foreign company operating as the MERIT hotel and casino ("venue" or "property") illegally and without the authority of the ROC and the rightful owner of the property, a Greek Cypriot family, which family was forcibly displaced by threat or force of arms during the Turkish invasion of Cyprus in 1974. The name of this hotel facility under its rightful owner was known as the "ZEPHYROS HOTEL" before the name was illegally altered, marketed and operated as the **MERIT to conceal its true identity and was used thereafter for illegal transactions. (See attached as Exhibit "A" – letter from the US Embassy of the ROC).**

6.      Defendant **NET HOLDINGS** A.,S  ("NET") is a publicly traded company formed under the laws of the Republic of Turkey and is headquartered in Istanbul, Turkey with regional offices in Moscow and Beirut, as well as several offices illegally operating in the occupied areas of the ROC.  NET purports to be the sole owner of VOYAGER

7.      **ONUR UNAL** is an adult male citizen of the Republic of Turkey who upon information and belief resides in Istanbul Turkey.

## BACKGROUND FACTS

8.      At all relevant times, VOYAGER and NET benefitted through the false marketing and advertising of the MERIT promoted under the "World Poker Tour" based in the USA. Upon information and belief, NET and VOYAGER conduct business and generate revenue through World Poker Tour marketed and advertised in the United States.

9.      At all times relevant, UNAL was an agent for NET.

---

[1] Also referred to as the MERIT CRYSTAL COVE HOTEL & CASINO.

COMPLAINT FOR DECLARATORY
JUDGMENT AND OTHER RELIEF

3

**10.** On August 8, 2010, ICTA, Voyager, and Julio Iglesias entered into the Artist Performance Agreement and Artist Performance International Rider (the "Contract"), in which Voyager agreed to pay ICTA in order to procure their client, and Julio Iglesias agreed to perform a concert on October 16, 2010 (the "Concert") at the Merit Crystal Cove Hotel ("Venue" or "property"), which is located in the purported TRNC. *See* **Attached Exhibit "B".**

**11.** Under the terms of the Contract, Voyager was to provide all of the necessary permits and licenses required by law for the purposes of lawfully conducting an event. *See* **Exhibit B, Contract § 2.**

12. Further, under the terms of this section of the Contract, Voyager guaranteed to provide all necessary security at the Venue and guaranteed that the Complied with all the safety regulations of the local authorities. Voyager also specified that they were solely responsible for the Artist's, the Artist's personnel, and the Agent's safety and all their property. *See* **Exhibit B, Contract § 2.**

13. Voyager intentionally concealed from ICTA the fact that the TRNC was not a State that is recognized by the United States or the United Nations as a country at all. With the assistance of false marketing schemes, advertising and misrepresentations by Voyager, the true nature and performance of the Contract violates the laws and rights of the Republic of Cyprus (the "ROC) and the actual legal owner, which renders the contract illegal and void. This material information was concealed while welcoming Mr. Iglesias and providing alleged security provided by the TRNC authorities. *See* **attached as Exhibit "C" -letter from TRNC Ministry.**

14. This form of security was not lawful as contemplated by the parties in executing the Contract.

15. NET and VOYAGER, through its agents and employees, intentionally concealed the fact that, if Mr. Iglesias performed pursuant to the Contract, he would be violating the laws of the

COMPLAINT FOR DECLARATORY
JUDGMENT AND OTHER RELIEF

4

ROC, the only recognized sovereign on the Island, and simultaneously trespassing upon the property belonging to a forcibly displaced Greek Cypriot and his family, who once operated the ZEPHYROS HOTEL and were forcibly dispossessed, which information was material to the necessary "meeting of the minds" forming the intent and terms of the Contract.

**16.** Countering the extensive false representations and assurances made by Voyager, whose actions were and are designed to mask and conceal TRNC's illegal nature and that of the Contract for August 16, 2010 concert, the Washington DC Embassy of the ROC sent a letter to ICTA and Mr. Iglesias informing them of the false history and illegal nature of the TRNC and the illegal operation of the MERIT. Mr. Iglesias was warned that, should he proceed with his performance in the occupied territories of ROC, it would be illegal in both violating the laws of the ROC and the rights of the legal owner of the property where his performance was to occur. **(See Ex. A)**.

17. The act of state doctrine is a judicially-created rule of decision that "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." *See Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 401, 84 S. Ct. 923, 926 (1964)*. Thedoctrine prevents any court in the United States from declaring that an official act of a foreign sovereign performed within its own territory is invalid. See Kirkpatrick, 493 U.S. at 405-06. It "requires that 'the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid.'" *See FOGADE v. ENB Revocable Trust, 263 F.3d 1274, 1293 (11th Cir. 2001) (quoting Kirkpatrick, 493 U.S. at 409)*.

18. Upon being so informed by the ROC, Mr. Iglesias was shocked to learn that he was being used clandestinely by NET and VOYAGER to unknowingly participate in violating laws of the ROC and trespass upon a forcibly displaced person's property that is a crime. (See Memorandum

19. Mr. Iglesias, after receiving notice of the safety, security, and legal concerns raised by his potential performance of the concert, refused to be "used" illegally as required by the Contract. Mr. Iglesias was not willing to violate the laws of the ROC nor the property rights of the refugee who legally owns the property.

20. Voyager represented and created the appearance that the Contract for the performance of Mr. Iglesias was legal in all aspects, including legitimate property ownership, and in compliance with all laws, regulations and permits that would obviously include the laws of the ROC.

21. However, any permits obtained under local TRNC laws, let lone the entry into Ercan airport or the performance would violate the laws of the ROC and/or the EU and USA rendering the contract's performance illegal and void.

22. Voyager represented itself to be legal in all respects operation and ownership, so as to wrongfully lure ICTA into executing the Contract and cause Mr. Iglesias to unknowingly violate the laws of the ROC, the United States and the United Nations.

23. The Contract falsely represented that Voyager was in strict compliance with all applicable laws and regulations, and that it was the lawful owner of the property where the concert was to be held.

24. ICTA executed the Contract while relying upon Voyager's representations that they were acting lawfully and had the authority lawfully to offer the Contract, even though Voyager was acting illegally and was not in compliance with the law, let alone rightfully or legally occupying the premises at which the Concert was to be performed. This fraudulent representation by Voyager makes the Contract unenforceable.

25. On information and belief, NET and VOYAGER had known about these facts prior to the execution of the Contract and remained silent on material terms.

COMPLAINT FOR DECLARATORY
JUDGMENT AND OTHER RELIEF

26. The performance of the Contract would have required Mr. Iglesias to unknowingly commit multiple illegal acts including but not limited to:

   a. Use of an airport named "Ercan" that is an illegal entry point under European Union law and the laws of the ROC. There is no legal entry point in the TRNC areas that could allow Mr. Iglesias's private jet to land with his 3000 kg concert gear. Upon information and belief, the land used as "Ercan" airport is legally owned by Greek Cypriots and not the TRNC or any other owners. **(See Exhibit D???)**

   b. Illegal advertisement and marketing of his concert, which would necessarily involve Mr. Iglesias in violating ROC laws and the property rights of another.

   c. Violation of the laws of the recognized (except by Turkey) sovereign, the ROC which sovereign found VOYAGER to be operating the chosen venue, the Merit, illegally which finding is to be provided judicial notice.

   d. Violation of the property rights of the legal owners of the property where the concert was to be performed.

27. After the cancellation, NET sought the assistance of ICTA

28. All conditions precedent have been performed, met, or waived.

**II.    Post Contract Cancellation Concealment And Misrepresentations**

29. From the time of the cancellation through June 2011, NET claimed ownership and was operating the MERIT legally in all respects.

30. NET made overtures with Mark Zurveinsky of suing Mr. Iglesias for not performing

**COMPLAINT FOR DECLARATORY**
**JUDGMENT AND OTHER RELIEF**

although NET had admitted to ICTA's representative at the time that the way the contract was written that Mr. Iglesias did not have to return the fees. Likewise, NET admitted that ICTA did not have any liability that prompted NET through its agents including its attorney, Onur Unal, to seek to manufacturer evidence against Mr. Iglesias by having ICTA change the material provisions of the Contract and back date the Agreement to reflect the date and times of the Contract signed.

31.  These material changes were also identified in email as well as numerous discussions through June 2011.

32.  NET through Orlando Carlumeno requested that ICTA provide a written request to visit the US to allow NET to discuss different joint business opportunities.  NET sent its agent/attorney UNAL to the US to specifically discuss in person business opportunities they wanted with ICTA to assist in which was represented as nature business between the parties.

33.  However, it soon became apparent that NET wanted to "set up" Mr. Iglesias through the manufacturing of evidence against him but needed the assistance of ICTA to do so, which illegal participation was refused.

34.  In June 2011, UNAL met with ICTA in USA and represented to ICTA that they can make millions against Mr. Iglesias and that Mark Zurevinsky, a promoter with business ties to VOYAGER and NET, had done it before against another entertainer by tainting his image through a lawsuit despite admitting that the lawsuit was based without merit.  UNAL went further stating that because of the name recognition oft the entertainer and the embarrassment in the media, Mr. Iglesias would want to settle and they all can make money.

35.   In June 2011, UNAL had met ICTA refused to participate in this illegal plan against Mr. Iglesias that exposed he true nature of NET'S requested presence in the USA under the guise of conducting business that provided cover and concealed the misrepresentations and wrongful intent of NET statements to ICTA, developed by NET but that was

36. At all times relevant, the Defendants conspired with each other, and if any reflection in email of ICTA being responsible was simply pretext by NET to blackmail Mr. Iglesias into paying enormous fees by tainting his name and legacy by suing him in the US as stated publicly by UNAl on behalf of NET.

37. NET directed its activities into the US through UNAL to cause harm against Mr. Iglesias and ICTA. NET through UNAL threatened legal action by their partner in the US which legal action took the form of a legal action threating ICTA.

**38.** Then when NET through its agents were meeting with ICTA, ICTA was given an ultimatum of manufacturing evidence against Mr. Iglesias or else.

**39.** On June 24, 2011, ICTA received a letter from the Embassy of Cyprus in which the history of the TRNC, and the property operating as the Merit allegedly owned by VOYAGER were determined to be acting in violation of the laws of the ROC and of the Greek Cypriot property owner. This is when ICTA was placed on notice of the facts supporting the fraud inherent in the Contract.

**40.** This memorandum was provided to NET and UNAL who upon being exposed threatened ICTA and its agent.

**41.** Shortly thereafter, Voyager filed a lawsuit against ICTA.

**42.** Other than the signing of the contract by a purported representative of VOYAGER, NET has controlled and conducted all negotiations regarding Contract and its cancellation.

## MALICE

43. Plaintiff incorporates by reference all preceding Paragraphs of this Complaint as if set forth in full. Defendants and their agents, coconspirators, including UNAL and partners in attorneys in the US, individually and in concert for their own self or joint interests have

intentionally, knowingly or with recklessness published false statements and portrayed Plaintiff in a false light by agreement, joint or individual interest and/or benefit to harm Plaintiff's reputation and his current and prospective business relationships.

## CONSPIRACY

44. Through the malicious actions of Defendants and their agents, including by agreement or joint interest and/or benefit have conspired with each other, to harm Plaintiff's reputation, client and prospective client relationships through fraudulent misrepresentations, intimidation or threats that include threats made by co-conspirator UNAL while meeting with ICTA in the United States in June 2011.

## TOLLING THE STATUTE OF LIMITATIONS

"No man may take advantage of his own wrong" and to note that this principle may be "employed to bar inequitable reliance on statutes of limitations." *See Interdonato v. Interdonato, 521 A.2d 1124, 1135 (D.C. 1987) (quoting Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 232, 233 (1959))*; *See also Alley v. Dodge Hotel, 551 F.2d 442, 446 (D.C.Cir.), cert. denied, 431 U.S. 958 (1977); Fontana v. Aetna Casualty & Surety Co., 363 F.2d 297, 299 (D.C.Cir.1966).* This case calls for the doctrine of equitable tolling to apply in this action to any limitations period that may have passed or raised as a defense. These claims are subject to equitable tolling. (providing for equitable tolling of a statute where a plaintiff's ability to discover his injury was obstructed by the adverse party's fraud); See *Miller v. Pac. Shore Funding, 224 F. Supp. 2d 977, 987 (D. Md. 2002)* (applying Maryland law in finding that "when a defendant's 'stealth [or] subterfuge' leaves a plaintiff 'blamelessly ignorant' of the facts and circumstances entitling him or her to relief, prevents the limitations clock from running until the plaintiff has learned or should have learned of the fraud.

**COMPLAINT FOR DECLARATORY**
**JUDGMENT AND OTHER RELIEF**

10

**LEGAL BASIS FOR IMMEDIATE DECLARATORY RELIEF**

Where the power to grant a declaratory judgment has been statutorily conferred on the courts, the courts may grant declaratory judgment in a case or actual controversy, irrespective of whether further relief is or could be sought. See 28 U.S.C. § 2201; Fed. R. Civ. P. 57; see also *Byers v. Byers, 254 F.2d 205, 209-10 (5th Cir. 1958)*. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Byers, 254 F.2d at 209-10 (internal quotation marks and citations omitted); see *Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995)*. Declaratory relief should not be denied where the controversy is of sufficient immediacy and reality. *See Super Tire Eng'g Co. v. McCorkle, 416 U.S. 115, 122 (1974)*. The powers of a court acting under a declaratory relief statute are broad. *See Gant v. Grand Lodge of Texas, 12 F.3d 998, 1001 (10th Cir. 1993)*. This court is requested to declare the performance of the Iglesias concert would violate the laws of the ROC or was otherwise illegal rendering the contract void and/or unenforceable.

**COUNT I**
**(Common Law Fraud)**

55. Plaintiff re-alleges paragraphs 1 through 54 of this Complaint as if set forth in full.

56. Defendants' unlawful conduct was intentional or reckless in that representations were made that were false and known by them to be false, including but not limited to the following: 1) that the "TRNC" is a recognized Government or State; 2) that the "TRNC" can issue valid title to property; 3) that VOYAGER is a properly and legally formed, licensed and registered company located in something called "Northern Cyprus" or "TRNC"; and 4) that VOYAGER was the owner of the property upon which Mr. Iglesias was to perform under the name MERIT CRYSTAL HOTEL & CASINO.

57. The Defendants' false representations were intended to be relied upon by Plaintiff and were in fact so relied upon, to the detriment of Plaintiff and its client.

58. Defendants' conduct was intentional, intended to cause harm, and did cause harm to

COMPLAINT FOR DECLARATORY
JUDGMENT AND OTHER RELIEF
11

Plaintiff.

59. There is a causal connection between the wrongful conduct of the Defendants and the harm to the Plaintiff.

60. As a result of the Defendants' conduct, jointly and individually, Plaintiff has suffered economic losses, loss of reputation within its industry, emotional distress, humiliation and personal indignity, fear, anxiety, and anguish.

**COUNT IV**
**(Detrimental Reliance)**

65. Plaintiff re-alleges paragraphs 1 through 64 of this Complaint as if set forth in full.

66. Defendant VOYAGER made promises to Plaintiff pursuant to a purported agreement.

67. Defendant VOYAGER reasonably expected its promises would induce action or forbearance by the Plaintiff and its client.

68. Defendant VOYAGER'S promise induced actual and reasonable action or forbearance by the Plaintiff.

69. Plaintiff detrimentally relied upon Defendant's promise, resulting in damages to Plaintiff.

**COUNT V**
**Intentional/Negligent Misrepresentation**

70. Plaintiff re-alleges paragraphs 1 through 69 of this Complaint as if set forth in full.

71. Defendants' intentional false misrepresentations were made while owing a duty of care to the Plaintiff.

72. Defendants intended that Plaintiff act or rely upon the intentionally false statements.

73. Defendants knew or should have known that Plaintiff would rely upon the intentionally

**COMPLAINT FOR DECLARATORY**
**JUDGMENT AND OTHER RELIEF**

false statements, which, if erroneous, would cause damage to Plaintiff.

74. Plaintiff justifiably relied upon the Defendants' statements and assertions.

75. As a result of Defendants' intentional acts, Plaintiff incurred damages.

## COUNT VI
### (Constructive Fraud)

76. Plaintiff re-alleges paragraphs 1 through 75 of this Complaint as if set forth in full.

77. Defendants owed a legal or equitable duty arising out of a relationship of trust or confidence with Plaintiff.

78. Defendants breached their duty to Plaintiff.

79. Defendants' conduct deceived or violated Plaintiff's confidence.

80. As a result of Defendants' breach of duty, Plaintiff suffered damages.

## COUNT VII
### (Concealment or Non-Disclosure)

81. Plaintiff re-alleges paragraphs 1 through 81 of this Complaint as if set forth in full.

81. Defendants had a duty to disclose material facts to the Plaintiff.

82. Defendants failed to disclose material facts to Plaintiff.

83 Defendants intended to deceive Plaintiff by failing to disclose material facts.

84. Plaintiff acted in justifiable reliance upon the misrepresentations of material facts by Defendants.

85. As a result of the concealment by Defendants, Plaintiff suffered damages.

## COUNT X

**(Intentional Interference With Prospective Business Advantage/Contract)**

98. Plaintiff re-alleges paragraphs 1 through 97 of this Complaint as if set forth in full.

99. Defendants acted negligently or intentionally in derogation of the rights of Plaintiff, as stated supra.

100. Defendants' conduct was calculated to cause harm to Plaintiff by causing Plaintiff's client, Julio Iglesias, unknowingly to violate the laws of the ROC and of the rightful legal property owner.

101. Defendants' conduct was committed with the unlawful or improper purpose to cause such damage, without justification, and with actual damage resulting to the Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court declare and enter an order and judgment against Defendants, jointly and severally, upon each count of the Complaint as follows:

1. Declare the performance of the Agreement between ICTA and VOYAGER would result in illegal acts and is therefore illegal and/or void *ab initio*; or in the alternative,

   a. Declare that VOYAGER is in breach of the Agreement or

   b. Declare that the Agreement was properly cancelled pursuant to its own terms; or

   c. Declare that ICTA has no liability for the cancellation of the Agreement by Mr. Iglesias.

2. Judgment against Defendants, jointly and severally, on all counts, for:

   a. Compensatory damages, including but not limited to monies invested by Plaintiff and lost business opportunities, to be determined at trial; and

**COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF**

14

    b.    Punitive damages.

3. Award attorneys' fees and costs; and

4. Grant such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY

Plaintiff demands trial by jury on all issues.

Respectfully Submitted,

TSIMPEDES LAW FIRM

BY:

    **/s/ Athan T. Tsimpedes**        Dated: March 5, 2014
    Bar no. 452341        Washington, DC
    1920 N Street, N.W.
    Suite 300
    Washington, D.C.  20036
    *Attorney for INTERNATIONAL CREATIVE TALENT AGENCY, LLC*

**COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF**

15